1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ANTHONY PAUL MAXWELL,                      No.  2:15-CV-0015-JAM-DMC-P

12                    Plaintiff,

13          v.                                   FINDINGS AND RECOMMENDATIONS

14   RYON MITCHELL, et al.,

15                    Defendants.

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.   Pending before the Court are Defendants' motion for summary judgement,

19   ECF No. 61, Plaintiff's opposition, ECF No. 65, and Defendants' reply, ECF No. 66.

20

21                              **I. BACKGROUND**

22   **A.      Plaintiff's Allegations**

23          Plaintiff, Anthony Paul Maxwell, names the following as Defendants in his first

24   amended complaint: (1) Ryon Mitchell; (2) Kevin Hass; (3) Ford Porter; (4) Kirk Trostle; (5) the

25   City of Chico Police Department; (6) the City of Chico; (7) Jeff Greeson; (8) the County of Butte;

26   and (9) the Butte County Superior Court.  See ECF No. 19, pg. 1.  Jeff Greeson, the County of

27   Butte, and the Butte County Superior Court have been dismissed.  See ECF Nos. 25 and 28.

28   Summons has been returned unexecuted as to Defendants Ford Porter and Kirk Trostle.  See ECF

                                        1

1   No. 42.

2          The following is a summary of Plaintiff's allegations as against the remaining four

3   defendants – Mitchell, Hass, the City of Chico Police Department, and the City of Chico.

4          Defendant Mitchell

5          Plaintiff states that, on May 8, 2013, he was stabbed and drove himself to Enloe

6   Hospital, where he left his vehicle unattended outside the emergency room.  See ECF No. 19, pgs.

7   6-7.  Plaintiff claims that due to blood loss, he could not completely answer questions asked of

8   him by Defendant Mitchell.  See id. at 7.  Defendant Mitchell was asked to move Plaintiff's car.

9   See id.  When Defendant Mitchell retrieved Plaintiff's keys, he noticed a metal canister attached

10  to the key ring.  See id.  When Defendant Mitchell asked him what was in the canister, Plaintiff

11  told him, "Nothing."  See id.  Plaintiff alleges that after this interaction, Defendant Mitchell

12  unscrewed the canister, retrieved a small amount of what he believed to be marijuana.  See id.

13  Plaintiff states that Defendant Mitchell told him that he was confiscating the marijuana, but that

14  Plaintiff would not be charged See id.

15         Plaintiff contends that Defendant Mitchell falsified a police report to indicate the

16  marijuana was originally found by the hospital staff, before being turned over to Defendant

17  Mitchell.  See id. at 7-9.  Plaintiff alleges that the hospital does not perform the type of inventory

18  described by Defendant Mitchell's report and that Mitchell did not leave the emergency room to

19  retrieve Plaintiff's keys.  See id. at 9.  Plaintiff also states that he never claimed the substance was

20  cannabis and that he was surprised by Defendant Mitchell's findings.  See id.  Plaintiff states that,

21  while an arrest warrant was issued on June 11, 2013, that the warrant was recalled on June 25,

22  2016, and that the charges against him resulting from the controlled substance possession were

23  dismissed for evidentiary problems at the preliminary hearing.  See id.

24         Defendant Hass

25         Plaintiff claims that Defendant Hass arrested him on June 27, 2013, based on the

26  recalled warrant.  See id. at 13.  Plaintiff is unclear when the warrant was recalled.  At page 9

27  Plaintiff alleges that the warrant was recalled June 25, 2016.  However, at page 13, Plaintiff states

28  the warrant was recalled prior to the alleged events of June 27, 2013.  According to Plaintiff,

1   Defendant Hass believed the warrant was active and instead of confirming that with police

2   dispatch, Hass radioed another patrol officer.  See id.

3          Plaintiff alleges that at the time of the arrest, Defendant Hass had his gun pointed

4   at Plaintiff and ordered Plaintiff onto the ground.  See id.  Plaintiff claims that he froze, raised his

5   hands, and remained still, but was unable to comply with Defendant Hass's order to get on the

6   ground due to his recent injuries.  See id.  Plaintiff alleges that Defendant Hass then ran up to

7   Plaintiff, kicked him in the lower abdomen causing Plaintiff to fall to the ground.  See id. at 13-

8   14.  Plaintiff asserts that he was then hit several times in the back by "what felt like a hard metal

9   object."  See id. at 14.  Plaintiff believes that he was hit with Defendant Hass's gun.  See id.

10  Plaintiff claims to suffer from several injuries due to Defendant Hass's alleged actions.  See id.

11                    Defendants City of Chico and City of Chico Police Department

12         Plaintiff alleges that Defendant the City of Chico Police Department "has a habit,

13  practice, and/or custom of protecting and sanitizing the illegal activities of their police officers,

14  and disregarding citizens' complaints."  See id. at 10.  Plaintiff also adds that Defendants the City

15  of Chico and the City of Chico Police Department are responsible for allowing this practice to

16  continue and are "completely indifferent through habit or custom. . . ." regarding violations by

17  police officers and covering them up.  See id. at 11.  Plaintiff further asserts that Defendant the

18  City of Chico Police Department "has a habit and/or custom" of allowing officers to not check the

19  validity of warrants.  See id. at 14.  According to Plaintiff, the chief of police at the time had a

20  custom of allowing his officers to engage in "free-style" policing.  See id. at 15.  Plaintiff

21  contends that Defendant the City of Chico is completely indifferent to these policies and

22  practices.  See id.

23      **B.    Summary of Legal Theories**

24         According to Plaintiff, these facts establish the following nine claims for relief:

25      First Claim          Unreasonable search.  See id. at 6.

26      Second Claim         Falsifying a police report.  See id. at 7.

27      Third Claim          Excessive bail.  See id. at 11.

28      Fourth Claim         False arrest.  See id. at 12.

| | | |
|---|---|---|
| 1 | Fifth Claim | Excessive force.  <u>See</u> <u>id.</u> at 15. |
| 2 | Sixth Claim | Failure to provide medical care.  <u>See</u> <u>id.</u> at 19. |
| 3 | Seventh Claim | Accepting the return of a recalled warrant.  <u>See</u> <u>id.</u> at 20. |
| 4 | Eighth Claim | Falsifying facts.  <u>See</u> <u>id.</u> at 22. |
| 5 | Ninth Claim | Malicious prosecution.  <u>See</u> <u>id.</u> at 24. |

**C.**      **Procedural History**

On January 5, 2015, Plaintiff initiated this prisoner civil rights complaint against Ryon Mitchell, Kevin Hass, and the City of Chico,[1] alleging that officer conduct violated his Fourth Amendment protection from unreasonable search and seizure and the use of excessive force.  <u>See</u> ECF No. 1.  On February 24, 2016, service was authorized for Defendants Mitchell and Hass.  <u>See</u> ECF No. 7.

On August 26, 2016, Plaintiff filed a first amended complaint naming: (1) Ryon Mitchell; (2) Kevin Hass; (3) Ford Porter; (5) Kirk Trostle; (6) Jeff Greeson; (7) City of Chico Police Department; (8) City of Chico; (9) Superior Court of Butte County; and (10) and County of Butte.  <u>See</u> ECF No. 19.  On August 31, 2018, service was found to be appropriate for Defendants City of Chico, City of Chico Police Department, Kevin Hass, Ryon Mitchell, Ford Porter, and Kirk Trostle.  <u>See</u> ECF No. 23.  Defendants Greeson, County of Butte, and Butte County Superior Court were dismissed for failure to state a claim on November 29, 2018.  <u>See</u> ECF No. 28.

On March 22, 2019, Defendants the City of Chico, the City of Chico Police Department, Hass, and Mitchell filed their Answers with a demand for jury trial.  <u>See</u> ECF No. 38.  The summons for Defendants Porter and Trostle were returned unexecuted on March 27, 2019.  <u>See</u> ECF No. 42.  The Court recommends that Defendants Porter and Trostle be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to timely effect service of process.

/ / /

/ / /

---

[1]      The original complaint lists the City of Chico as the defendant in one section and the Chico Police Department in a separate section, but only ever appears to list three defendants.

Defendants the City of Chico, the City of Chico Police Department, Hass, and Mitchell filed their motion for summary judgement on May 15, 2020.  <u>See</u> ECF No. 61.  On July 15, 2020, Plaintiff filed his opposition.  <u>See</u> ECF No. 65.  Defendants filed their reply on July 22, 2020.  <u>See</u> ECF No. 66.

## II. THE PARTIES' EVIDENCE

### A.   <u>Defendants' Evidence</u>

Defendants' motion for summary judgment is supported by the sworn declarations of Sharon Medellin, ECF No. 61-2, and J. Greeson, ECF No. 61-16.  Defendants further rely on the following exhibits:

| | |
|---|---|
| <u>Exhibit A</u> | Mitchell Report.  ECF No. 61-3. |
| <u>Exhibit B</u> | Enloe Hospital Management of Patient Property Policy.  ECF No. 61-4. |
| <u>Exhibit C</u> | Plaintiff's First Amended Complaint.  ECF No. 61-5. |
| <u>Exhibit D</u> | Controlled Substance Screening Report.  ECF No. 61-6. |
| <u>Exhibit E</u> | Property Receipt Form.  ECF No. 61-7. |
| <u>Exhibit F</u> | Affidavit.  ECF No. 61-8. |
| <u>Exhibit G</u> | Criminal Complaint.  ECF No. 61-9. |
| <u>Exhibit H</u> | Warrant Abstract.  ECF No. 61-10. |
| <u>Exhibit I</u> | Arraignment Record.  ECF No. 61-11. |
| <u>Exhibit J</u> | City of Chico Memorandum.  ECF No. 61-12. |
| <u>Exhibit K</u> | Letter to Plaintiff.  ECF No. 61-13. |
| <u>Exhibit L</u> | Hass Report.  ECF No. 61-14. |
| <u>Exhibit M</u> | Hass Declaration of Probable Cause.  ECF No. 61-15. |

/ / /

/ / /

5

1      Defendants also submit a Statement of Undisputed Facts, ECF No. 61-17, in which

2  they contend that the following facts are established:

3              Facts Related to Defendant Mitchell

4      On May 8, 2013, Officer Mitchell responded to Enloe Hospital in Chico regarding

5  a report of a stabbing victim, later identified as Plaintiff.  See id. at 2.  Officer Mitchell made an

6  initial contact with Plaintiff to discuss the circumstances surrounding the stabbing.  See id.

7  Hospital staff then informed Officer Mitchell that Plaintiff's clothing and property were removed

8  and inventoried pursuant to hospital procedure. See id.  During the inventory process, staff

9  located a blue metallic cylindrical pill container attached to Plaintiff's key chain.  See id.  Inside

10  the cylinder, hospital staff located a plastic cigarette wrapper containing a dark-colored, pebble-

11  shaped substance.  See ECF No. 61-17, pg. 2.  Hospital staff gave the key chain, pill container,

12  and its contents to hospital Security Officer Pat Maloney.  See id.  Officer Maloney then provided

13  the items to Officer Mitchell.  See id.  Officer Mitchell looked inside the cylinder and, based on

14  his training and experience, believed the substance to be heroin.  See id.  Officer Mitchell went

15  back to Plaintiff and asked him if the items belonged to him.  See id.  Plaintiff had lost a lot of

16  blood as a result of his stabbing wound and was having trouble communicating.  See id.

17  Nevertheless, Plaintiff admitted that the items belonged to him and stated that the substance was

18  concentrated cannabis or hashish.  See id.

19      Officer Mitchell returned to the station where he weighed and tested the substance.

20  See id.  It tested presumptive positive for heroin and had a gross weight of .10 grams.  See id. at

21  2-3. The heroin and packaging material were booked into evidence.  See id. at 3.  Officer Mitchell

22  prepared a report and an Affidavit in Support of Arrest Warrant.  See id.  The Affidavit stated,

23  among other things, as follows: (1) Officer Mitchell responded to Enloe Hospital regarding a

24  stabbing victim (Plaintiff); (2) medical staff had removed Maxwell's clothing and personal

25  property from him before Officer Mitchell's arrival; (3) during a routine inventory of Plaintiff's

26  property by medical staff pursuant to hospital policy, a suspicious substance was found inside a

27  blue metallic pill cylinder attached to Plaintiff's key chain; (4) the suspicious substance was

28  provided to Officer Mitchell: (5) based on his training and experience Officer Mitchell believed

6

1  the substance to be heroin; (6) Plaintiff confirmed that they key chain and metal cylinder

2  belonged to him; (7) after returning to the Department, Officer Mitchell weighed and tested the

3  substance; and (8) the substance tested presumptive positive for heroin and weighed .10 gross

4  grams.  See id.

5                     Facts Related to Criminal Case No. CM038756

6                     On or around May 29, 2013, the Butte County District Attorney filed a criminal

7  complaint against Plaintiff (Butte County Superior Court Case No. CM038756), and an arrest

8  warrant was issued on June 11, 2013.  See id.  Plaintiff was arrested on the warrant and released

9  on his own recognizance on or around June 25, 2013.  See id.  Plaintiff's conditions of release

10  required him to submit to search of his "person, property, residence, vehicle or any container

11  under [his] control, at any time, day or night, by a peace officer (with or without a warrant or his

12  consent)."  See ECF No. 61-17, pgs. 3-4.  Plaintiff's search conditions specifically stated that he

13  was subject to search for "controlled substances" and "paraphernalia."  See id. at 4.

14                     The charges against Plaintiff were ultimately dismissed by the District Attorney's

15  Office because it was unable to determine which specific employee of Enloe Hospital conducted

16  the inventory of Plaintiff's property.  See id.  Without a way to establish chain of custody, it was

17  unlikely the government could prove the case beyond a reasonable doubt to a trier of fact.  See id.

18  The decision to dismiss the charges against Plaintiff was not the result of a determination that

19  Plaintiff was innocent of the charged criminal conduct.  See id.

20                     Facts Related to Defendant Hass

21                     On June 27, 2013, at approximately 1100 hours, Officer Hass was in the parking

22  lot of the Matador Motel when he observed a vehicle registered to Plaintiff.  See id.  Officer Hass

23  was familiar with Plaintiff, was informed that Plaintiff's extensive criminal history included drug

24  offenses and assault on peace officers with a firearm, and knew that Plaintiff was out of custody

25  on his own recognizance from the Butte County Jail on drug charges.  See id. at 4-5.  Officer

26  Hass observed Plaintiff exit one of the motel rooms, walk to his vehicle, and place an unknown

27  object in the trunk.  See id. at 5.  Officer Hass contacted Plaintiff and ordered him to the ground.

28  See id.  Plaintiff ignored Officer Hass's commands and proceeded to walk back to his motel

room.  See id.  Officer Hass struck Plaintiff once in the lower abdomen with his right foot in order to secure compliance.  See id.  Plaintiff fell to the ground and was detained without further incident.  See id.  Plaintiff was initially placed under arrest for a violation of California Penal Code Section 148(a) (resisting/delaying a peace officer).  See id.  During the search of Plaintiff's person incident to arrest and pursuant to the conditions of his release related to the May 2013 incident, Officer Hass found a large ball of suspected heroin, a hypodermic needle, and $1,700 in cash.  See ECF No. 61-17, pg. 5.

Facts Related to Criminal Case No. CM039056

A search of Plaintiff's motel room and vehicle was then conducted.  See id.  A digital gram scale, two bent silver spoons with heroin residue, large amounts of black tar heroin, and a glass smoking pipe were located.  See id.  Additional charges for violations of Health & Safety Code Section 11350(a) (possession of a controlled substance), Health & Safety Code Section 11351 (possession for sale), Health & Safety Code Section 11352 (transportation of a controlled substance), and Penal Code Section 12022.1 (commission of a felony while on bail/O.R. release) were added for purposes of Plaintiff's arrest.  See id.  The suspected heroin tested presumptive positive.  See id. at 6. The total amount of heroin recovered at the scene was 4.2 ounces.  See id.

The criminal case against Plaintiff (Butte County Superior Court Case No. CM039056) was eventually dismissed because it was procedurally not in a posture to go to trial when three other consolidated matters went before a jury.  See id.  The People chose to move forward with the jury trial on the consolidated matters and continue CM039056 until after the jury trial was complete.  See id.  After securing convictions in the consolidated matters, the People decided to dismiss CM039056 in the interest of justice, since it would take substantial law enforcement, jury, and court resources on a case that could only result in two additional years of incarceration.  See id.  The decision to dismiss the charges against Plaintiff was not the result of a determination that Plaintiff was innocent of the charged criminal conduct.  See id.

/ / /

/ / /

1  **B.**     **Plaintiff's Evidence**

2          Plaintiff's opposition to Defendants' motion for summary judgement asserts that

3  there are genuine issues of disputed facts.  <u>See</u> ECF No. 65.  Because Plaintiff is pro se, the Court

4  "must consider as evidence in his opposition to summary judgment all of [the] contentions

5  offered in motions and pleadings, where such contentions are based on personal knowledge and

6  set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty

7  of perjury that the contents of the motions or pleadings are true and correct."  <u>Jones v. Blanas</u>,

8  393 F.3d 918, 923 (9th Cir. 2004).

9          Within his opposition, Plaintiff asserts that the claims against Defendant Mitchell

10 are not barred, due to the fact that Mitchell conducted an unlawful search.  <u>See</u> ECF No. 65, pg. 2.

11 However, Plaintiff does not offer any evidence related to this assertion.  <u>See</u> <u>id.</u>  Plaintiff further

12 contends that undisputed facts establish that Defendant Mitchell's affidavit was falsified, and that

13 Defendant Mitchell conducted an unreasonable search without probable cause but, again, does not

14 cite to any evidence to support this contention.  <u>See</u> <u>id.</u>  Plaintiff goes on to claim that Defendant

15 Hass made his arrest based on a recalled warrant and that Defendant Hass also falsified his arrest

16 report.  <u>See</u> <u>id.</u>  Again, Plaintiff does not cite to any evidence to support this claim.  <u>See</u> <u>id.</u>

17         Plaintiff also asserts that Defendant Hass's actions constituted excessive force, and

18 that kicking and hitting Plaintiff was unnecessary and unreasonable.  <u>See</u> ECF No. 65, pg. 2.

19 Plaintiff cites to no evidence to support the contention that Defendant hit Plaintiff, other than the

20 undisputed fact asserted by Defendants that Defendant Hass kicked Plaintiff.  <u>See</u> <u>id.</u>  Plaintiff

21 admits that he did not comply with Defendant Hass's instruction to get on the ground and asserts

22 that the did not comply because the ground was hot, and that Plaintiff had medical concerns

23 related to the stitches recently removed from his stomach.  <u>See</u> <u>id.</u> at 2-3.  However, Plaintiff does

24 not assert that he communicated to Defendant Hass that the reason he was not complying with

25 orders was his concern about the heat of the ground or that he was worried about his stitches.  <u>See</u>

26 <u>id.</u>  Plaintiff contends that he did tell Defendant Hass about his recent surgery and the removal of

27 his stitches.  <u>See</u> <u>id.</u> at 3.

28 ///

9

1    Plaintiff reasserts that Defendants Hass and Mitchell falsified their reports and that

2    both Defendants violated his Fourth and Fourteenth Amendment rights.  See id.  Plaintiff does not

3    provide any evidence to support these assertions.  See id.

4    Plaintiff contends that his claim against Defendants City of Chico and Chico

5    Police Department are based on their failure to properly train officers, the municipal entities

6    deliberately ignoring the conduct of their officers, and the habits, customs, or policies, which are

7    created by the entities ignoring the conduct of their officers.  See ECF No. 65, pgs. 3-4.  Plaintiff

8    provides no evidence supporting the assertion that the municipal Defendants ignored any conduct

9    of their officers or of any policy responsible for that conduct.  See id.

10

11    **III. STANDARD FOR SUMMARY JUDGEMENT**

12    The Federal Rules of Civil Procedure provide for summary judgment or summary

13    adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

14    together with affidavits, if any, show that there is no genuine issue as to any material fact and that

15    the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

16    standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

17    56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

18    the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

19    Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

20    moving party

21    . . . always bears the initial responsibility of informing the district court of
22    the basis for its motion, and identifying those portions of "the pleadings,
     depositions, answers to interrogatories, and admissions on file, together
23    with the affidavits, if any," which it believes demonstrate the absence of a
     genuine issue of material fact.

24    Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

25    If the moving party meets its initial responsibility, the burden then shifts to the

26    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

27    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

28    establish the existence of this factual dispute, the opposing party may not rely upon the

10

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251.

/ / /

/ / /

1

# IV. DISUCSSION

In their motion for summary judgment, Defendants argue: (1) Plaintiff cannot prevail on his claims of unlawful search and seizure against Defendant Mitchell or Hass (first, second, fourth, and seventh claims); (2) Plaintiff's excessive force claim against Defendant Hass fails because the force used was objectively reasonable and Defendant Hass is entitled to qualified immunity (fifth claim); (3) Plaintiff's claim of denial of medical care fails because he does not allege he was injured or requested assistance (sixth claim); (4) Plaintiff fails to establish that Defendants Mitchell and Hass are liable for malicious prosecution (ninth claim); and (5) the municipal defendants are not liable for any actions alleged in Plaintiff's first amended complaint.[2]

## A.    Search and Seizure

Plaintiff alleges unconstitutional searches and seizures in his first, second, fourth, and seventh claims.  Plaintiff's first claim is related to the search conducted at Enloe Hospital on May 8, 2013.  See ECF No. 19, pgs. 6-7.  His second claim stems from Defendant Mitchell's affidavit in support of the arrest warrant related to the search conducted on May 8, 2013.  See id. at 7-11.  Plaintiff's fourth and seventh claims relate to Defendant Hass's arrest of Plaintiff on June 27, 2013.  See id. at 12-15; 20-21.

### 1.    May 8, 2013, Search

In his first claim, Plaintiff contends Defendant Mitchell conducted an illegal search at Enloe Hospital on May 8, 2013.  "The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"  Smith v. Maryland, 442 U.S. 735, 739 (1979).  The Court, in evaluating Fourth Amendment claims, analyzes: (1) whether there was an actual expectation of privacy; and (2) whether that expectation of privacy was reasonable.  See id. at 740.  The analysis requires a balancing of the need for the search against the intrusion to personal rights.  See United States v. Place, 462 U.S. 696, 703 (1983).  In the hospital setting, the expectation of privacy is reduced when receiving emergency medical care.  See Smith, 422 U.S. at 740.  When a private individual

---

[2]    Plaintiff's third and eighth claims are alleged against county defendants Gleeson and Butte County.  These defendants were dismissed at the screening stage for failure to state a claim.  The third and eighth claims are, therefore, no longer before the Court.

1  undertakes actions in a search, they do not violate Fourth Amendments protections.  See United

2  States v. Jacobsen, 466 U.S. 109, 115 (1984).

3          Defendants assert that the search is not actionable under the Fourth Amendment

4  because it was conducted by a private actor.  Defendants also argue that, even if it is actionable,

5  the search was objectively reasonable as a matter of law.

6              a.      Whether an Actionable Search Occurred

7      Defendants contend:

8          Plaintiff's claim is . . .barred because Officer Mitchell did not
           conduct a "search" of Plaintiff's property as that term is contemplated
9          under the Fourth Amendment . . .

10                          * * *

11          . . . In this instance, hospital staff searched the pill cylinder, which
           Plaintiff admits belonged to him, and discovered a suspicious substance.
12         (SS [Separate Statement], ¶¶ 4-5, 11.) Hospital staff turned the cylinder
           over to hospital Security Officer Pat Maloney. (SS, ¶ 6.) Officer Maloney
13         then provided it to Officer Mitchell. (SS, ¶ 7.) Officer Mitchell looked in
           the same pill cylinder searched by hospital staff to confirm the information
14         provided and discovered a substance that he believed to be heroin based
           on his training and experience. (SS, ¶ 8.) Accordingly, Officer Mitchell's
15         act of looking in the pill canister did not exceed the scope of the prior
           search by hospital staff and did not constitute a "search" for Fourth
16         Amendment purposes in the first instance. Thus, Plaintiff's claim fails as a
           matter of law.
17
   ECF No. 61, pgs. 15-16.
18
           Defendants' argument is based on Defendant Mitchell's police report (Exhibit A)
19
   and the Enloe Hospital patient property management policy (Exhibit B).  See ECF No. 61-17, pg.
20
   2, ¶¶ 4-8, 11 (Defendants' Separate Statement).  In his report at Exhibit A, Defendant Mitchell
21
   states:
22
           . . .I contacted (S) Anthony Maxwell in the emergency room.
23         Maxwell's clothing and property was [sic] removed from his person as
           part of the common medical process.  Medical staff conducted an
24         inventory of Maxwell's property as a result.  During this inventory they
           located a blue metallic cylindrical pill container connected to Maxwell's
25         keychain.  Inside the pill container was a plastic cigarette wrapper.  Inside
           the wrapper was a dark colored pebble shaped substance.  Medical staff
26         gave the key chain / pill container and it's [sic] contents to security staff
           on scene.  Security staff provided me with the items upon my arrival. . . .
27
   ECF No. 61-3, pg. 2 (Exhibit A).
28
                          13

Exhibit B, Enloe Hospital's policy statement for management of patient property, confirms that patients admitted for emergency treatment will have their clothing and property inventoried.  See ECF No. 61-4, pgs. 3-5.

Defendants' exhibits establish that hospital staff – not Defendant Mitchell or anyone else acting under color of law – searched Plaintiff's belongings prior to Defendant Mitchell arriving on the scene.  If undisputed, this evidence would defeat Plaintiff's claim because no search actionable under § 1983 occurred.

Because Defendants have identified evidence which, if undisputed, would entitled Defendant Mitchell to judgment as a matter of law on Plaintiff's first claim, the burden shifts to Plaintiff to identify evidence showing a genuine dispute of fact.  In his opposition to Defendants' motion, Plaintiff states "Defendant Mitchell did conduct an unlawful search. . . ."  See ECF No. 65, pg. 2.  Plaintiff offers no specific factual detail to support this argument and does not point to any evidence to dispute Defendant Mitchell's statement that Plaintiff's property was first searched by hospital staff consistent with the hospital's policy.

In his first amended complaint, which is verified and, as such, constitutes his declaration, Plaintiff states the following at paragraphs 19-21:

> 19.    Plaintiff alleges that on May 8, 2013, he was stabbed in the parking lot of Win-Co Supermarket. . . . Plaintiff drove to Enloe Hospital and left his car in the emergency round-about entrance to the emergency room but away from the door.
>
> 20.    Plaintiff had lost alot [sic] of blood, and could not answer Officer Ryon Mitchell completely.  The customer service representative asked Officer Mitchell to move the car.
>
> 21.    Officer Mitchell retrieved the keys, then stood over Plaintiff shaking a metal canister attached to the key ring.  Mitchell asked what was in the canister. . . .
>
> ECF No. 19, pgs. 6-7.

Considered as Plaintiff's declaration in opposition to Defendant's motion, this evidence does not create a genuine dispute.  Specifically, Plaintiff's statement that Defendant Mitchell "retrieved the keys" is not inconsistent with Defendant Mitchell's report that hospital staff inventoried Plaintiff's keychain prior to the officer's arrival.  Moreover, Plaintiff's statement

14

1   that Defendant Mitchell "stood over" him "shaking a metal canister attached to the key ring" does

2   not undermine Defendant Mitchell's statement that plaintiff's property was inventoried prior to

3   that by hospital staff, consistent with the hospital's policy.

4           The Court finds that Plaintiff has not satisfied his burden of demonstrating the

5   existence of a genuine dispute of fact as to the relevant timeline of the events of May 8, 2013.

6   The undisputed evidence shows that Plaintiff's property was searched in the first instance by

7   Enloe Hospital staff – consistent with the hospital's patient property inventory and management

8   policy. This search was not undertaken under color of law. Therefore, Plaintiff's first claim fails

9   as a matter of law because no actionable search occurred.  See Jacobsen, 466 U.S. at 115.

10                          b.      Expectation of Privacy

11          According to Defendants:

12                  The crux of Plaintiff's claim is that Officer Mitchell unlawfully
        searched the cylinder attached to his key ring after being informed by
13      Enloe Hospital staff that it contained a suspicious substance. . . .
                Here, it is undisputed that Plaintiff was receiving emergency
14      medical care at Enloe Hospital for a stabbing wound at the time hospital
        staff conducted an inventory search of his belongings pursuant to hospital
15      policy and notified Officer Mitchell of a suspicious substance inside the
        pill cylinder attached to his key ring. (SS, ¶¶ 1-7.) Additionally, the FAC
16      admits that Plaintiff had lost a lot of blood as a result of his stabbing
        wound and was having trouble communicating (SS, ¶ 10), rendering an
17      inventory of Plaintiff's property to determine if he was in possession of
        anything that could be affecting his health all the more important. As such,
18      Plaintiff had no legitimate expectation of privacy with respect to the pill
        cylinder or its contents.
19
        ECF No. 61, pg. 14.
20

21          In the first amended complaint, Plaintiff alleges he drove himself to Enloe Hospital

22   on May 8, 2013, after being stabbed.  See ECF No. 19, pgs. 6-7.  He also states he suffered blood

23   loss to the point he could not completely answer questions.  See id. at 7.  These allegations, which

24   are made under penalty of perjury, establish that Plaintiff presented to the hospital on May 8,

25   2013, for emergency care, and are consistent with the undisputed evidence presented by

26   Defendants.[3]  Under this circumstance, Plaintiff's expectation of privacy in the personal

27   _____

28          [3]      Defendants cite Exhibits A and B in support of their argument relating to
     Plaintiff's expectation of privacy upon reporting to the hospital for emergency medical care.

1    belongings on his person at the time was necessarily diminished.  See Smith, 422 U.S. at 740.

2    Plaintiff's expectation of privacy was further diminished given the dire situation, demonstrated by

3    blood loss which prevented Plaintiff from responding to questions.

4            The Court concludes that, even if an actionable search did occur, it was reasonable

5    as a matter of law.  Given the acute medical situation that existed when Plaintiff presented to the

6    emergency room for care after being stabbed and suffering significant blood loss, any search of

7    Plaintiff's belongings, for purposes of inventorying and identify substances which might be

8    causing or exacerbating Plaintiff's medical emergency, was not only reasonable but necessary to

9    provide the treatment Plaintiff was seeking.

10                           2.    Arrest Warrant Affidavit

11           In his second claim, Plaintiff alleges Defendant Mitchell falsified his police report

12   and an affidavit in support of the arrest warrant issued in connection with the May 8, 2013,

13   incident at Enloe Hospital.  Affidavits supporting a warrant have a presumption of validity.  See

14   Franks v. Delaware, 438 U.S. 154, 171 (1978).; see also Gifford v. Siskiyou County Sheriff, 2017

15   WL 3911924, *3 (E. Dist. Cal. 2017); United States v. Bowser, 2011 WL 4566116, *4 (E. Dist.

16   Cal. 2011).  Individuals challenging the veracity of an affidavit in support of a warrant must show

17   both: (1) the affidavit contains one or more intentionally or recklessly false statements; and

18   (2) the affidavit does not establish probable cause absent the false statement(s).  See Franks, 438

19   U.S. at 156; see also Hervey v. Estes, 65 F.3d 784, 788-89 (9th Cir. 1995) (applying Franks to a

20   § 1983 claim based on false information allegedly included in a warrant affidavit).

21           Defendants assert that Plaintiff cannot meet his burden of producing evidence to

22   establish that the warrant lacked probable cause.  According to Defendants:

23           Plaintiff's Second cause of action likewise fails as a matter of law
             because Plaintiff cannot meet his burden of producing evidence to
24           establish that the Affidavit in support of the arrest warrant issued in
             connection with the May 2013 incident did not show probable cause.
25           Plaintiff asserts that his arrest on the warrant prepared by Officer Mitchell
             was unlawful allegedly due to falsification of the facts set forth by Officer
26           Mitchell in his Affidavit. (footnote omitted). . . .
                      The only statement set forth in the Affidavit that is contradicted by
27           the allegations of the FAC is the statement, "When shown the contents of
             the cylinder, Maxwell said the substance was concentrated cannabis/
28           hashish." However, a review of the Affidavit establishes that the

                                            16

remaining, uncontroverted statements were more than sufficient to
establish probable cause for issuance of the arrest warrant. The Affidavit
indicates, among other things, as follows: (1) Officer Mitchell responded
to Enloe Hospital regarding a stabbing victim, later identified as Plaintiff;
(2) medical staff had removed Maxwell's clothing and personal property
from him before Officer Mitchell's arrival; (3) during a routine inventory
of Plaintiff's property by medical staff and hospital security, they found a
suspicious substance inside a blue metallic pill cylinder attached to
Plaintiff's key chain; (4) the suspicious substance was provided to Officer
Mitchell: (5) based on his training and experience Officer Mitchell
believed the substance to be heroin; (6) Plaintiff confirmed that they key
chain and metal cylinder belonged to him; (7) after returning to the
Department, Officer Mitchell weighed and tested the substance; and (8)
the substance tested presumptive positive for heroin and weighed .10 gross
grams. (SS, ¶ 16.) In other words, the Affidavit informed the reviewing
judge that heroin was discovered among Plaintiff's belongings upon being
admitted to the emergency room at Enloe Hospital. It likewise advised that
hospital staff first reported the suspicious substance and Officer Mitchell
specifically stated in the Affidavit that the substance appeared to be heroin
based on his training and experience as a peace officer. . . .

ECF No. 61, pg. 16-18.

In his verified first amended complaint, Plaintiff alleges at paragraph 23 that the

following statements in Defendant's Mitchell's police report of the May 8, 2013, encounter at

Enloe Hospital are false:

"When they checked the interior of the canister they found a
suspicious substance inside.  The medical staff then provided the key
ring / canister to Enloe Security Staff.  The medical staff then advised me
of their findings."

"I then contacted Enloe Security, Officer Pat Maloney, and he
provided me with the aforementioned item."

"I returned to the emergency room and re-contacted Maxwell. . . I
then asked Maxwell what the substance was.  Maxwell said the substance
was concentrated cannabis or hashish."

ECF No. 19, pg. 8.

He also alleges the following statement by Maxwell in an affidavit supporting the arrest warrant

stemming from May 8, 2013, is false:

"During a routine inventory of Maxwell's property by medical
staff and hospital security, they found a suspicious substance inside a blue
metallic pill cylindrical pill cylinder attached to Maxwell's key ring.  The
suspicious substance was provided to me.  Based upon my experience and
training, I believed the substance to be heroine.  I then displayed the key
chain and metal cylinder to Maxwell and he claimed the property to be his.
When shown the contents, Maxwell said the substance was contraband

17

1    cannabis / hashish. . . .”

2    ECF No. 19, pgs. 8-9.

3    Plaintiff alleges that Enloe Hospital “doesn't implement the type of impetus inventory stated by

4    Officer Mitchell.” Id. at 9.

5    Nowhere in either the pleadings, nor in Plaintiff's opposition to Defendants'

6    motion for summary judgment, does Plaintiff explain why he believes Defendant Mitchell's

7    various statements are untrue.  Nor does he offer his version of the truth.  It appears Plaintiff

8    contends the keychain was not his, that the substance found was not in fact contraband, or that he

9    did not admit it was contraband. However, he offers no evidence in support of these propositions.

10   The Court observes that the only rationale provided by Plaintiff – that Enloe Hospital does not

11   implement a patient property inventory system – is belied by the undisputed evidence,

12   specifically Enloe Hospital's policy statement at Defendants' Exhibit B, discussed above.

13   Defendants' argument relies on Defendant Mitchell's affidavit in support of the

14   arrest warrant, submitted as Exhibit F and cited in paragraph 16 of Defendant's Separate

15   Statement.  See ECF No. 61-17, pg. 3.  In the affidavit, Defendant Mitchell states:

16   On 05-08-2013, at approximately 0045 hours, I responded to Enloe
     Hospital for a stabbing report.  I contacted (Victim / Suspect) Anthony
17   Paul Maxwell, identified by a [sic] his California Driver License, in the
     emergency room.  Maxwell had sustained single stab wound to the upper
18   right abdomen while at the Winco Foods parking lot in the City of Chico,
     County Butte.  Medical staff had removed Maxwell's clothing and
19   personal properly from him prior to my arrival.  During a routine
     inventory of Maxwell's property by medical staff and hospital security,
20   they found a suspicious substance inside a blue metallic pill cylinder
     attached to Maxwell's key chain.  The suspicious substance was provided
21   to me.  Based on my experience and training, I believed the substance to
     be Heroine.  I then displayed the key chain and metal cylinder to Maxwell
22   and he claimed the property to be is.  When shown the contents of the
     cylinder, Maxwell said the substance was concentrated cannabis / hashish.
23   After returning to the police department I weighed and tested the
     substance.  The substance tested presumptive positive for Heroine and
24   weighed .10 gross grams.

25   ECF No. 61-8, pg. 2 (Exhibit F).

26   Whether Plaintiff admitted that the substance was contraband is irrelevant because

27   the unchallenged portions of the affidavit establish that it was contraband.  Specifically, the

28   affidavit reflects that Defendant Mitchell tested the substance upon his return to the police station

18

1  and determined it was "presumptively positive" for heroin.  Plaintiff does not allege these

2  portions of the affidavit are false.

3          Plaintiff does, however, claim Defendant Mitchell was not truthful in stating

4  Plaintiff admitted owning the keychain and attached pill cylinder. While Plaintiff appears to

5  challenge this portion of the affidavit, he does not provide any evidence to indicate the statement

6  is not true.  The only argument raised by Plaintiff – that Enloe Hospital does not conduct such

7  inventories of patient property – is belied by the undisputed evidence.

8          The Court finds that Defendants have met their initial burden of showing that the

9  affidavit offered by Defendant Mitchell in support of the arrest warrant established probable

10  cause, and that Plaintiff has not met his burden to establish a genuine dispute of fact on this issue.

11  Defendant Mitchell is entitled to judgment as a matter of law on Plaintiff's second claim.

12                          3.    June 27, 2013, Arrest

13          In his fourth claim, Plaintiff contends Defendant Hass falsely arrested him on a

14  recalled warrant.  In his seventh claim, Plaintiff contends Defendant Hass improperly accepted

15  the "Return on Arrest Warrant."  Defendants assert that Plaintiff's fourth and seventh claims fail

16  because Plaintiff was in fact not arrested on the warrant stemming from the incident on May 8,

17  2013, but instead was arrested for new criminal activity.  Defendant argues:

18          The Fourth and Seventh claims relate to the June 27, 2013 arrest
19          and are based on the false premise that Plaintiff was arrested on the
            warrant issued with respect to the May 2013 incident, which had been
20          recalled. Plaintiff's claims fail as a matter of law because, contrary to
            the allegations of the FAC, Plaintiff was arrested for new criminal activity
21          discovered after a search of Plaintiff's person, his vehicle, and his motel
            room pursuant to the conditions of Plaintiff's O.R. release on the May
22          2013 arrest. . . .

23  ECF No. 61, pg. 18.

24          In his fourth claim, Plaintiff alleges:

25          Plaintiff further alleges that on June 27, 2013, Officer Hass noticed
            Plaintiff's car at the Matador Motel.  Although the warrant was out of the
26          system Hass believed the warrant to be active.  Instead of checking with
            dispatch Hass allegedly confirmed that said arrest warrant was active and
27          valid by radio through another patrol officer.

28  ECF No. 19, pg. 13.

                                        19

1   In his seventh claim, Plaintiff contends that Defendant Hass improperly returned a recalled arrest

2   warrant in support of his arrest of Plaintiff on June 27, 2013.  See id. at 21.

3          The factual premise of Plaintiff's fourth and seventh claims – that he was arrested

4   on June 27, 2013, based on an invalid or recalled prior warrant – is belied by the evidence

5   submitted by Defendants showing that the June 27, 2013, arrest was based on new criminal

6   activity first observed by Defendant Hass on that day.  In paragraphs 7, 18- 20, 25-31, and 33-36

7   of Defendants' Separate Statement, which they cite in their brief, Defendants refer to Exhibits A,

8   I, and L.  See ECF No. 61-17, pgs. 2-5.  Exhibit A, discussed above, is Defendant Mitchell's

9   report of his contact with Plaintiff at Enloe Hospital.  See ECF No. 61-3, pgs. 2-3.  Exhibit I is a

10  Butte County Superior Court form entitled "Additional Conditions for Release on Own

11  Recognizance or Bail" for case no. CM038756, filed on June 25, 2013.  See ECF No. 61-11, pgs.

12  2-4.  Exhibit L is Defendant Hass's police report dated June 27, 2013.  See ECF No. 61-14, pgs.

13  2-5.

14         Exhibit L is particularly informative as it recounts the events of June 27, 2013, at

15  the Matador Motel.  Defendant Hass states: "On 06-27-2013, at about 1100 hours, I contacted

16  suspect Maxwell at the Matador Motel."  Id. at 2.  Defendant Hass's narrative attached to the

17  report describes how he observed suspicious activity, investigated, and ultimately arrested

18  Plaintiff after finding 4.2 ounces of heroin and $1,700.00 in cash.  See id. at 2-4.

19         By this evidence, that Plaintiff's arrest on June 27, 2013 was based on new

20  criminal activity unrelated to the events of May 8, 2013, Defendants have met their burden of

21  identifying  a genuine dispute as to a material fact underlying Plaintiff's claims.  The burden thus

22  shifts to Plaintiff to provide evidence indicating a dispute that can only be resolved by a jury.  To

23  do this, Plaintiff must present evidence raising a dispute as to the basis for his arrest on June 27,

24  2013.  He has not done so.  In his opposition brief, Plaintiff merely repeats his allegations that

25  Defendant Mitchell fabricated his report and affidavit and that Plaintiff was arrested on June 27,

26  2013, based on a recalled warrant.  See ECF No. 65, pg. 2.  Plaintiff offers no evidence to support

27  these general claims.  Considered as his declaration, the allegations in Plaintiff's verified first

28  amended complaint are also conclusory and, as such, do not establish the existence of a genuine

1    dispute of material fact.

2    The undisputed evidence – specifically Defendant Hass's report of his arrest of

3    Plaintiff on June 27, 2013, at Exhibit L – establishes that Plaintiff was arrested due to new

4    criminal activity and not an invalid or recalled warrant.  Defendant Hass is entitled to judgment as

5    a matter of law on Plaintiff's fourth and seventh claims.

6    **B.    Excessive Force**

7    In his fifth claim, Plaintiff alleges that Defendant Hass used excessive force during

8    the arrest on June 27, 2013.  Defendants assert that Defendant Hass is entitled to judgment as a

9    matter of law because the use of force was objectively reasonable, going both to the merits and

10   qualified immunity.  See id. ECF No. 61, pgs. 19-24.

11   1.    Use of Force

12   The Fourth Amendment provides protection from unreasonable search and seizure.

13   This protection includes protection from the use of excessive force.  See Graham v. Connor, 490

14   U.S. 386, 395 (1989); see also Robinson v. Solano Cty., 278 F.3d 1007, 1009 (9th Cir. 2002).  An

15   excessive force analysis under the Fourth Amendment utilizes the objective reasonableness

16   standard.  See id.  The Court must balance the "nature and quality of the instruction on the

17   individual's Fourth Amendment interests against the importance of the governmental interests

18   alleged to justify the intrusion."  Scott v. Harris, 550 U.S. 372, 383 (2007).  A determination of

19   whether force was objectively unreasonable "requires careful attention to the facts and

20   circumstances of each particular case, including the severity of the crime at issue, whether the

21   suspect poses an immediate threat to the safety of the officers or others, and whether he is

22   actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 397.

23   According to Defendants: "Here, Officer Hass's act of striking Plaintiff once in the

24   abdomen to secure compliance was reasonable as a matter of law given the totality of the

25   circumstances."  ECF No. 61, pg. 20.  In addition to the three factors outlined in Graham,

26   Defendants contend the nature of the intrusion indicates Defendant Hass's use of force was

27   objectively reasonable.  See id. at 20-22.  For the reasons discussed below, the Court finds that

28   these considerations show the use of force was objectively reasonable and that Defendant Hass is

1    entitled to judgment as a matter of law on Plaintiff's fifth claim.

2                              a.      Severity of Crime

3         According to Defendants:

4              At the time of this incident, Plaintiff was a known drug offender
         and subject to search by law enforcement at any time for controlled
5         substances and paraphernalia. (SS, ¶¶ 19-20, 26.) Once detained, Officer
         Hass found a large ball of suspected heroin, a hypodermic needle, and
6         $1,700 in cash on Plaintiff's person. (SS, ¶ 33.) A search of Plaintiff's
         room and vehicle uncovered a digital gram scale, two bent silver spoons
7         with heroin residue, large amounts of black tar heroin, and a glass
         smoking pipe. (SS, ¶ 34-35.) In addition to being arrested for violating
8         Penal Code Section 148(a) (resisting/delaying a peace officer), Plaintiff
         was also charged with violations of Health & Safety Code Section
9         11350(a) (possession of a controlled substance), Health & Safety Code
         Section 11351 (possession for sale), Health & Safety Code Section 11352
10        (transportation of a controlled substance), and Penal Code Section 12022.1
         (commission of a felony while on bail/O.R. release) were added for
11        purposes of Plaintiff's arrest. (SS, ¶ 36.) The total amount of heroin
         recovered at the scene was 4.2 ounces. (SS, ¶ 37.) Health & Safety Code
12        Sections 11351 and 11352 are both felonies, and Penal Code Section
         12022.1 serves as a penalty enhancement. There is no dispute that the
13        crimes for which Plaintiff was arrested on June 27, 2013 were serious in
         nature and justified the use of a single compliance strike in order to take
14        Plaintiff into custody after he refused Officer Hass's command to get to
         the ground.
15
         ECF No. 61, pg. 21.
16

17            In paragraphs 19-20, 26, and 33-37 of their Separate Statement, referenced in their

18    brief, Defendants cite Exhibits I, L, and M.  See ECF No. 16-17, pgs. 3-6.  Exhibits I and L are

19    discussed above.  Exhibit M is a June 27, 2013, declaration of probable cause for detention and

20    bail-setting signed by Defendant Hass.  See ECF No. 61-15, pg. 2.  In Exhibit M. Defendant Hass

21    states:

22            On June 27th, 2013, at about 1100 hours, I (Officer Kevin Hass) was on
         duty for the Chico Police Department in full uniform and driving a marked
23        patrol vehicle.  I observed a male suspect in the parking lot of 1934
         Esplanade (Matador Motel, Chico.  I recognized the male subject as
24        Anthony Paul MAXWELL (DOB: 03/30/1952).  Myself and other Chico
         Police Officers have been searching for MAXWELL as he had a felony
25        warrant for his arrest.  MAXWELL also is on searchable O.R. (own
         recognizance) from the Butte County Jail.  I attempted to contact
26        MAXWELL in the parking lot, however, he refused commands.  I had to
         forcibly detain MAXWELL after a strike to the lower abdomen.  A search
27        of MAXWELL revealed 12.74 grams of heroin and $1700.00 dollars in
         cash on his person.  A search of MACWELL'S vehicle revealed additional
28        heroin and a digital gram scale

                                          22

ECF No. 16.15, pg. 2 (Exhibit M).

The Court agrees with Defendants that this evidence establishes that Defendant Hass perceived a potentially severe crime, specifically a drug offense involving a significant amount of heroin.  Plaintiff has not offered any evidence to create a dispute on this point.

### b.      Threat to Safety

Defendants contend:

> At the time Officer Hass attempted to initiate contact with Plaintiff, Officer Hass was familiar with Plaintiff and knew that Plaintiff was out of custody on his own recognizance from the Butte County Jail on illegal drug charges. (SS, ¶ 26.) It is also common knowledge among law enforcement that suspects who commit drug offenses often carry guns or other deadly weapons. Indeed, Officer Hass knew that Plaintiff's extensive criminal history included drug offenses and assault on peace officers with a firearm. (SS, ¶ 26.) Plaintiff likewise made it clear from the outset that he was not going to comply with Officer Hass's orders, a scenario that creates more of a risk to officer safety than a suspect who willingly complies with orders.

ECF No. 61, pg. 22.

Paragraph 26 of Defendants' Separate Statement cites Exhibit L, which is Defendant Hass's police report, discussed above.  See ECF No. 61-17, pg. 4.  Defendant Hass's report details the following: (1) he was informed by Officer Ratto that Plaintiff had an extensive criminal history; (2) Plaintiff was at the time released on his own recognizance on drug charges; (3) Defendant Hass observed Plaintiff place an unknown object in the trunk of Plaintiff's vehicle; (4) Plaintiff refused Defendant Hass's initial order to get to the ground; and (5) following the non-compliance, Plaintiff appeared to be headed in the direction of Room 23.  See ECF No. 61-14, pg. 4 (Exhibit L).  The Court agrees with Defendants that this evidence, which Plaintiff does not put into dispute, shows that Defendant Hass perceived a threat to both officer and public safety.

### c.      Resisting/Evading Arrest

Defendants assert:

> It is undisputed that Officer Hass attempted to initiate contact with Plaintiff in the parking lot of the Matador Motel and that Plaintiff refused to comply with Officer Hass's order to get to the ground. (SS, ¶¶ 25, 28-

29.) Instead, Plaintiff proceeded to return to his motel room. (SS, ⁋ 29.)
The FAC does not dispute that Plaintiff refused to comply with Officer
Hass's order. While Plaintiff alleges that he was unable to get to the
ground because he was still healing from the stab wound he suffered on
May 8, 2013, there is no evidence in this case that Officer Hass was aware
of the stab wound or the status of Plaintiff's recovery. Critically, there is
no evidence in this case that Plaintiff informed Officer Hass at any point
that he was unable to comply with his command due to his prior injury.
There is also no evidence in this case that Plaintiff's outward appearance
or mannerisms would have suggested to Officer Hass that there was
anything physically wrong with Plaintiff that would have rendered the
decision to strike Plaintiff once with his right foot to secure compliance
unreasonable as a matter of law. Thus, based on the information available
to Officer Hass at the time, he was confronted with a subject who was
simply refusing to comply with commands.

ECF No. 61, pg. 22.

Defendants again cite to Exhibit L in support of their argument.  See ECF No. 61-
17, pgs. 4-5.  Exhibit L, which is discussed above, shows that Plaintiff resisted/evaded arrest.
First, Plaintiff refused Defendant Hass's order to get to the ground.  See ECF No. 61-14, pg. 4.
Second, immediately after this command, Plaintiff appeared to be moving towards Room 23.  See
id.  This evidence is undisputed.

        d.     Nature of the Intrusion

In addition to the Graham factors above, Defendants contend the nature of the
intrusion involved further indicates reasonableness.  According to Defendants, ". . .the Ninth
Circuit has found equally *and more* aggressive police conduct than that of Officer Hass
objectively reasonable, even where the conduct resulted in serious physical injury."  ECF No. 61,
pg. 20 (emphasis added; citations omitted).

Defendants' argument is persuasive.  As a starting point, it is axiomatic that
officers have the right to use some degree of physical coercion to effect an arrest or investigatory
stop.  See Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).  In Johnson
v. County of Los Angeles, 340 F.3d 878, 793 (9th Cir. 2003), the court held that a hard pulling
and twisting was reasonable.  In Jackson v. City of Bremerton, 268 F.3d 646, 652-53 (9th Cir.
2001), the court concluded that spraying the plaintiff's hair with a chemical irritant, pushing her
to the ground to handcuff her, and roughly pulling her to her feet did not constitute excessive

1   force.  In <u>Forrester v. City of San Diego</u>, 25 F.3d 804, 807 (9th Cir. 1994), the court determined

2   that application of "pain compliance techniques" to remove anti-abortion demonstrators blocking

3   access to an abortion clinic was objectively reasonable.  In <u>Eberle v City of Anaheim</u>, 901 F.2d

4   814, 819-20 (9th Cir. 1990), the court held that the use of a finger-hold to control a belligerent

5   football fan was objectively reasonable.

6          Here, Defendant Hass delivered a single strike to the abdomen to secure Plaintiff's

7   compliance after he refused the officer's orders and appeared to attempt to evade apprehension.

8   Further, the facts indicate that Plaintiff was suspected of having committed a severe crime, and

9   Defendant Hass perceived a reasonable and real threat to officer and public safety.  On this

10  record, the Court finds that the level of force used was warranted given the circumstances.

11                 2.     <u>Qualified Immunity</u>

12         Government officials enjoy qualified immunity from civil damages unless their

13  conduct violates "clearly established statutory or constitutional rights of which a reasonable

14  person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  In general,

15  qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

16  law."  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

17  immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

18  injury, the facts alleged show the defendant's conduct violated a constitutional right.  <u>See Saucier</u>

19  <u>v. Katz</u>, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

20  the right was clearly established.  <u>See id.</u>  This inquiry "must be undertaken in light of the specific

21  context of the case, not as a broad general proposition . . . ."  <u>Id.</u>  "[T]he right the official is

22  alleged to have violated must have been 'clearly established' in a more particularized, and hence

23  more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

24  official would understand that what he is doing violates that right."  <u>Id.</u> at 202 (citation omitted).

25  Thus, the final step in the analysis is to determine whether a reasonable officer in similar

26  circumstances would have thought his conduct violated the alleged right.  <u>See id.</u> at 205.

27         When identifying the right allegedly violated, the court must define the right more

28  narrowly than the constitutional provision guaranteeing the right, but more broadly than the

25

1  factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th

2  Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently

3  clear that a reasonable official would understand [that] what [the official] is doing violates the

4  right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

5  concludes that a right was clearly established, an officer is not entitled to qualified immunity

6  because a reasonably competent public official is charged with knowing the law governing his

7  conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

8  has alleged a violation of a clearly established right, the government official is entitled to

9  qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

10  did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

11  also Saucier, 533 U.S. at 205.

12          The first factors in the qualified immunity analysis involve purely legal questions.

13  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

14  determination based on a prior factual finding as to the reasonableness of the government

15  official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

16  has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

17  555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

18  most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See

19  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

20          Defendants argue:

21              Here, the gravamen of the Fifth cause of action is that Officer Hass
           used unreasonable force against Plaintiff by administering a single strike
22         to Plaintiff's abdomen after he refused to comply with Officer Hass's
           command to get to the ground. However, it is clear that a reasonable
23         officer in Officer Hass's position could have reasonably believed that his
           conduct was lawful based upon the totality of the circumstances. The facts
24         in the case do not demonstrate that he was clearly on notice that his
           actions in detaining Plaintiff violated a right that had been clearly
25         established under the circumstances of this case. This is not a situation
           where a law enforcement officer administered strikes to a particularly
26         vulnerable place of the body, such as the groin, or administered repeated
           strikes to a suspect even after the suspect was rendered helpless or
27         exhibited signs of compliance, which have been held to amount to
           excessive force. . . . Instead, Plaintiff made clear he would not comply

28

26

1   with Officer Hass's command and, in response, Officer Hass administered
    only that minimum amount of force necessary to secure compliance.

2

    ECF No. 61, pgs. 23-24.

3

4       The Court agrees.  Simply put, the reasonableness of Defendant Hass's conduct, as

5   discussed above, entitles him to qualified immunity.  He cannot be liable because, in the face of a

6   clearly established right to be free from the use of excessive force, Defendant Hass acted

7   reasonably under the circumstances.

8       **C.      Medical Needs**

9       In his sixth claim, Plaintiff asserts that Defendant Hass violated his Fourteenth

10  Amendment rights by failing to obtain medical clearance for Plaintiff prior to his booking.  See

11  ECF No. 19, pg. 19-20.  The Due Process Clause of the Fourteenth Amendment requires that

12  medical care be provided to "persons. . . who have been injured while being apprehended by the

13  police."  City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983); see also Maddox

14  v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986).  Both Revere and Maddox decline

15  to identify the standard for pretrial detainees who require medical attention.  See Revere, 463 U.S.

16  245 ("Whatever the standard may be, Revere fulfilled its constitutional obligation by seeing that

17  Kivlin was taken promptly to a hospital that provided the treatment necessary for his injury.");

18  see also Maddox, 792 F.2d 1415 ("We need not decide the precise standard which applies in

19  determining whether a city fulfills its due process obligations to pretrial detainees who require

20  medical attention.").

21      Defendants argue that Plaintiff cannot prevail on his sixth claim because he fails to

22  allege that he needed or requested medical treatment.  See ECF No. 61, pgs. 25-26.  The Court

23  agrees.  A review of the first amended complaint reflects no allegations indicating that Plaintiff

24  ever said he needed or requested medical assistance.  At paragraph 66 of the first amended

25  complaint, Plaintiff states that "Hass failed to obtain Plaintiff's medical clearance prior to

26  booking Plaintiff in jail. . . ."  ECF No. 9, pg. 20.  This allegation, however, does not indicate that

27  Plaintiff ever informed Defendant Hass he required medical help.

28  / / /

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.     Malicious Prosecution

In his ninth claim, Plaintiff alleges that Defendants Hass and Mitchell are liable for malicious prosecution.  See ECF 19, pgs. 24-25.  Malicious prosecution claims under § 1983 require plaintiffs to show: (1) the defendant's prosecuted the plaintiff with malice; (2) without probable cause; and (3) for the purpose of denying the plaintiff either equal protection or another constitutional right.  See Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004); see also Sheldon Appel Co. v. Albert & Oliker, 47 Cal.3d 863, 871 (1989).  Malicious prosecution actions can be brought against any "persons who have wrongfully caused the charges to be filed." See Awabdy, 368 F.3d at 1066 (citing Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126–27 (9th Cir.2002)).  Finally, under California law, malicious prosecution actions require a showing that the prosecution terminated in a way showing the plaintiff's innocence.  See Pattiz v. Minye, 61 Cal. App. 4th 822, 827 (1998).

Defendants contend that Plaintiff fails to establish a claim for malicious prosecution against Hass and Mitchell because: (1) there is no evidence either criminal case against Plaintiff was commenced by or at the direction of Defendants Hass or Mitchell; (2) Plaintiff cannot establish favorable termination of either criminal case; (3) the prosecutions were based on probable cause; (4) Plaintiff does not allege that the prosecutions were initiated due to malice on the part of either Defendant Hass or Mitchell; and (5) Plaintiff does not allege that the prosecutions were initiated by either Defendant Hass or Mitchell for the purpose of denying Plaintiff equal protection or another constitutional right.  See ECF No. 61, pg. 26-28.

### 1.     Whether Defendants Hass or Mitchell Prosecuted Plaintiff with Malice to Deny Equal Protection or Another Constitutional Right

Defendants contend Plaintiff has not alleged either Defendant Mitchell of Hass prosecuted him with malice to deprive Plaintiff of equal protection or another constitutional right. See ECF No. 61, pgs. 26-28.

To this point, clearly Plaintiff cannot show that either Defendant Mitchell or Hass initiated prosecutions against him, because they did not.  Any criminal cases filed against Plaintiff were initiated by the District Attorney's Office, not an individual police officer.  Ordinarily, the

1    filing of a criminal complaint by an independent prosecutor provides a shield against the liability

2    of those who participated in the investigation or filed a report that resulted in initiation of

3    proceedings.  See Smiddy v. Varney, 665 F.2d 261, 266-68 (9th Cir. 1981).  There may be

4    situations, however, in which individual officers improperly exert influence on the prosecutor

5    such that they may be liable.  See Galbraith, 307 F.3d at 1126-27 (holding that a coroner's

6    recklessly false statements which led to the plaintiff's arrest supported a claim for malicious

7    prosecution).

8              For all the reasons discussed above, the Court finds that none of the alleged

9    conduct of Defendants Mitchell or Hass led to prosecutions by way of impropriety.  Plaintiff

10   claims Defendant Mitchell's false statements led to his first prosecution.  However, the

11   undisputed evidence shows Defendant Mitchell's allegedly false statements did not invalidate the

12   arrest warrant in connection with the first prosecution.  Plaintiff also claims Defendant Hass's

13   improper arrest on a recalled/invalid warrant from the first prosecution led to his second

14   prosecution.  This claim is also meritless because the undisputed evidence shows that Plaintiff's

15   second prosecution arose from new criminal conduct unrelated to the first prosecution.  To the

16   extent Plaintiff was prosecuted, the actions were not initiated due to misconduct by either

17   Defendant Mitchell or Hass.

18             Because the prosecutions were not initiated due to any impropriety on the part of

19   Defendants Mitchell or Hass, Plaintiff cannot establish that they exerted some improper influence

20   on the prosecutor in either case.  Therefore, Plaintiff cannot further establish other necessary

21   elements of his claim, specifically that Defendants Mitchell and Hass acted with malice for the

22   purpose of denying Plaintiff equal protection or another constitutional right.  Moreover, the first

23   amended complaint contains no allegations suggesting Defendants Mitchell or Hass acted with

24   malicious or discriminatory intent.[4]

25   _____

26   [4]      There is simply no basis in Plaintiff's allegations to find a discriminatory
     component to Plaintiff's claims.  Plaintiff does not make membership in a protected class an issue
27   in the pleadings.  Defendants make no reference in the evidence they present to any protected
     class.  And, after spending considerable time evaluating the parties' arguments and evidence, the
28   Court cannot find any equal protection aspect of the case on the current record.  This alone is
     sufficient to defeat Plaintiff's ninth claim.

2.    Whether the Prosecutions Were Based on Probable Cause

To prevail, Plaintiff must show that the prosecutions were not based on probable cause.  See Awabdy, 368 F.3d at 1066.  According to Defendants: "As to the second prong, as explained immediately above, both of Plaintiff's arrests at issue in this case were supported by probable cause. (SS, ¶ 16, 19-20, 33.)."  ECF No. 61, pg. 28.  The Court agrees.  Having thoroughly examined the evidence offered relating to the affidavits in support of the two prosecutions, as discussed in detail above, the Court finds the evidence shows both prosecutions were supported by probable cause.  For this independently sufficient reason, Defendants Mitchell and Hass are entitled to judgment as a matter of law on Plaintiff's ninth claim.

3.    Whether the Prosecutions Resulted in Favorable Termination

Under California law, malicious prosecution actions require a showing that the prosecution resulted in a determination of the plaintiff's innocence.  See Pattiz, 61 Cal. App. 4th at 827.  Defendant argue:

> In dismissing the two criminal actions against Plaintiff, the Butte County Deputy District Attorney did not determine that Plaintiff was innocent of the charged offenses. (SS, ¶¶ 21, 38.) With respect to the May 8, 2013 arrest, the District Attorney's Office was unable to determine which specific employee of Enloe Hospital conducted the inventory of Plaintiff's property. (SS, ¶ 21.) Without a way to establish chain of custody, it is unlikely The People could prove the case beyond a reasonable doubt to a trier of fact. (SS, ¶ 21.) As to the June 27, 2013 arrest, the criminal case was dismissed because it was procedurally not in a posture to go to trial when 3 other consolidated matters went before a jury. (SS, ¶ 38.) The People chose to move forward with the jury trial on the 3 consolidated matters and continue CM039056 until after the jury trial was complete. (SS, ¶ 38.) After securing convictions in the consolidated matters, The People decided to dismiss CM039056 in the interest of justice, since it would take substantial law enforcement, jury, and court resources on a case that could only result in two additional years of incarceration. (SS, ¶ 38.) Consequently, neither dismissal speaks to Plaintiff's "innocence of the misconduct." (Pattiz, 61 Cal. App. 4th at 827; SS, ¶¶ 21, 38.) Certainly, the dismissals leave, at a minimum, "some doubt" as to Plaintiff's innocence. (Id.) That is sufficient under California law to find that there was no favorable termination.

ECF No. 61, pg. 28.

At paragraphs 21 and 38 of their Separate Statement, Defendants cite the declaration of Jeff Greeson, Esq.  See ECF No. 16-17, pgs. 4, 6.  Mr. Greeson is a Deputy District Attorney with the Butte County District Attorney's Office.  See ECF No. 16-16, pg. 2 (Greeson

1   declaration). Mr. Greeson states that he was the prosecutor assigned to the criminal complaints

2   against Plaintiff in case nos. CM038756 and CM039056. See id. As to case no. CM038756 (the

3   prosecution arising from the events of May 8, 2013, at Enloe Hospital), Mr. Greeson states he

4   dismissed the government's case without a finding of guilt or innocence because he could not

5   determine precisely who among the Enloe Hospital staff conducted the inventory of Plaintiff's

6   personal items. See id. As to case no. CM039056 (the prosecution arising from Plaintiff's arrest

7   at the Matador Motel on June 27, 2013), Mr. Greeson states that, in the interests of justice, he

8   chose to pursue convictions on three related consolidated matters against other defendants and

9   dismiss the case against Plaintiff without any determination of guilt or innocence. See id.

10      This evidence makes clear that both criminal prosecutions were terminated by the

11   prosecutor in his discretion and in the interests of justice. It is also clear that neither prosecution

12   resulted in a determination on the merits of guilt or innocence. On this evidence, the Court agrees

13   that Plaintiff cannot establish favorable termination of either prosecution. For this additional

14   independent reason, Defendants Mitchell and Hass are entitled to judgement as a matter of law on

15   Plaintiff's ninth claim.

16      **E.      Municipal Liability**

17      Municipalities and other local government units are among those "persons" to

18   whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

19   Counties and municipal government officials are also "persons" for purposes of § 1983. See id.

20   at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). A local

21   government unit, however, may not be held responsible for the acts of its employees or officials

22   under a respondeat superior theory of liability. See Bd. of County Comm'rs v. Brown, 520 U.S.

23   397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not of

24   the actions of its employees or officers. See id. To assert municipal liability, therefore, the

25   plaintiff must allege that the constitutional deprivation complained of resulted from a policy or

26   custom of the municipality. See id.

27      Defendants contend that the City of Chico and the City of Chico Police

28   Department cannot be held liable absent any underlying constitutional violation committed by

1   one or more of their officers.  See ECF No. 61, pgs. 29-30.  Defendants further assert that

2   Plaintiff has failed to otherwise establish municipal liability under Monell.  See id.

3          The Court agrees that Defendants the City of Chico and the City of Chico Police

4   Department cannot be held liable.  Municipal liability rests upon constitutional violations which

5   result from a policy or custom of the municipal entity.  Logically, if there is no constitutional

6   violation, it cannot be said that a violation resulted from a municipal policy or custom.  Thus, if

7   there is no constitutional violation, the essential element of municipal liability under Monell

8   cannot be satisfied.  Such is the case here.  As discussed above, the Court finds that Plaintiff

9   cannot establish that any constitutional violations occurred in this case.  It is therefore impossible

10  for him to be able to establish that any policy or custom of either municipal defendant resulted in

11  a constitutional violation.  Defendants the City of Chico and the City of Chico Police Department

12  are entitled to judgment as a matter of law.

13                                **V. CONCLUSION**

14          Based on the foregoing, the undersigned recommends that;

15          1.      Defendants Porter and Trostle be dismissed pursuant to Federal Rule of

16  Civil Procedure 4(m) for failure to effect timely service of process; and

17          2.      The remaining defendants' motion for summary judgment, ECF No. 61, be

18  granted.

19          These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

21  after being served with these findings and recommendations, any party may file written objections

22  with the court.  Responses to objections shall be filed within 14 days after service of objections.

23  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

24  Ylst, 951 F.2d 1153 (9th Cir. 1991).

25

26  Dated:  March 22, 2021

27                                              _____
                                                DENNIS M. COTA
28                                              UNITED STATES MAGISTRATE JUDGE